Now first, please call the case. Case number 315-0654. People of the State of Illinois. Appellee by Jasmine Morton v. Stephen Varnauskas. Appellant by Andrew Lloyd. Please proceed. You said we didn't have a patent change for the same people. Good afternoon, Your Honors. Andy Boyd from the State Appellate Defender's Office. On behalf of the defendant Stephen Varnauskas, the police, the court, and counsel, this case presents the court with the following two questions. First, may a police officer stop a vehicle for a reason that he knows or should know was barred by a precedential decision of the appellate court? The second question is may the police relocate a vehicle to conduct a third search for contraband after two roadside searches have come up empty? The answer to both of these questions, Your Honors, is no. The first issue that we've raised is that the traffic stop in this case was unlawful. And we've cited three reasons that we believe that this traffic stop was unlawful. The first one is that under a binding precedent in place at the time of Mr. Varnauskas' traffic stop, a bicycle wrap was clearly not a valid reason for a stop because the wrap was not attached to the license plate. And that's the Guy Tan decision, the appellate court's Guy Tan decision in 2013. Second, a later decision issued by the Supreme Court in Guy Tan prior to Mr. Varnauskas' trial confirmed that there was not any valid reason for the traffic stop in this case. The Supreme Court in Guy Tan reaffirmed that only items that are physically attached to a license plate are prohibited. And again, that's the Guy Tan decision from the Supreme Court in 2015. And thirdly, Your Honors, Trooper Griser, the arresting officer in this case, could not have made an objectively reasonable mistake of law in stopping Mr. Varnauskas because he either knew or he should have known about the appellate court's decision in Guy Tan, which was a law at the time of the traffic stop. Let me ask you this. Had that statute been amended prior to this traffic stop? The statute had been amended, Your Honor. And what the amendment did was it removed language about license plate covers. And it moved that language from the subsection of the statute that's at issue here to a different subsection of the statute, subsection G. So all it did was pull out language about license plate covers, which are not an issue in this case, and it simply moved that from one section of the statute to the other. But now the statute says that any place and position should be clearly visible and shall be maintained in a condition to be clearly legible, free from any materials that would obstruct the visibility of the player. It does say that, yes. And in this situation, this obstructed that. Isn't that the case? According to what Trooper Griser said, yes, it did. And there's no reason to believe that he was testifying falsely about that. So, I mean, when you look at the forum, this clearly violated that section. Not respectfully, Your Honor, not on the interpretation of that statute by either of the Guy Tan courts. But wasn't that the case that interpreted the statute before it was amended? Yes, Your Honor, that's absolutely true. The amendment of the statute had nothing to do with what's at issue in this case. License plate covers are not the issue in this case. The issue in this case is whether the bicycle rack was prohibited by the statute. And respectfully, it was not because it was not a chance to play. That was the holding of Guy Tan in the appellate court, and that holding was affirmed by the Supreme Court, even though the Supreme Court decided the case on a different issue. A lot of reasonable mistake. Oh, no. I mean, when the statute was amended, now what you look at is if when the plate is in a place and position, be clearly visible and shall be maintained in the condition, be clearly legible, free from any materials that would obstruct the visibility of the plate. And then when you look at the exhibit in this case, this clearly was obstructed, the plate's obstructed. It is. It is. At least with that picture, one thing I would respectfully point out is what that picture shows is that the car is stationary. When Trooper Bronser pulled over in his car, Mr. Barnhouse was traveling at highway speed. These flaps would have been blowing in the wind if they would not have been laying down in front of these numbers the way it's shown in the photograph. But that notwithstanding, Trooper Bronser did testify that he was only able to read a couple of the numbers on the plate. That clearly is true. Some of the lettering and some of the numbers would have been obstructed by the rack. That's what Trooper Bronser testified to. When you look at the rack, that's where it shows, right? Yes, it does. But we have these two decisions in this case, one by the Appellate Court, one by the Supreme Court of Illinois, both stating that this statute does not prohibit items that are not attached to the plate itself. It wasn't the statute, it was the prior statute. Respectfully, Your Honor, the statute didn't change in any material way. All the legislature did was move one clause. And why do you suppose they did that? I don't know, Your Honor. No idea? Pardon? Not even a guess? Perhaps to emphasize that license plate covers were illegal, or perhaps to add additional emphasis to the legislature's determination that these items were unlawful? Isn't the point of the rear license plate for the police to be able to see it and identify the owner and possibly the driver? I'm sorry? Isn't the point of a registration plate on a car, isn't the whole point of that plate to allow the police to identify the owner and possibly the driver and see if the car is stolen, is the owner wanted and is the owner driving? Of course. And you can't do that unless you can see the plate when you're right behind it. The point the Supreme Court made in Guyton was that, with all due respect, the interpretation you're suggesting of this statute criminalizes a great deal of ordinary behavior. If you can't read a license plate, for example, because there's a bicycle rack on the back of the car or because there is a motorized scooter being hauled around by a disabled person or a wheelchair being hauled around by a disabled person or somebody who's moving in and rented a trailer, for example, all these things obscure the visibility of a license plate, and that is ordinary, lawful, non-criminal conduct. And the interpretation of the statute that the state urges in this case, and I sense Your Honor is urging in this case, criminalizes ordinary behavior, and there's no indication that I can see that that's what the legislature intended to do. And if the legislature had intended to do that, Your Honor, it would have been very easy for this legislature to do that. They could have said in no uncertain terms, very clearly, that anything that obscures a license plate is unlawful, period. And they didn't do that. All they did was they changed one illustrative example and they pulled that from one subsection of the statute and they put it in the other. With all due respect, Your Honor, that's not a material change in the statute, and it certainly doesn't impact anything that happened in this case under the decisions of the appellate court and the Supreme Court in Guy Pann. So you're saying that the generalized catch-all kind of language that Justice Carter has read twice now was in the original statute as well? Yes, Your Honor. Both of these statutes, and I've put them here at the end of my notes so I would have them. Both of these statutes said that license plates that shall be placed in position be clearly visible, shall be maintained in condition to be clearly legible, free from any materials that would disrupt the visibility of the plate. The statute in force at the time of the Guy Pann decision included, as an example, including but not limited to glass covers and plastic covers. By the time Mr. Barnoskas was pulled over, the legislature had simply moved that limiting clause with examples of glass covers and plastic covers and simply moved that from one section of the statute to the other. That's all they'd done. The statute had not changed in any material way. And the interpretation of that statute, the binding interpretation of that statute from the appellate court and also from the Supreme Court, is that items that are not attached to a license plate are not a violation of the law and therefore provide no reason for a traffic stop. And that's why we're arguing that this traffic stop is not valid for misinterception. Well, they changed it to where it's not a violation. I mean, they moved it. They did? Yes, we moved it for a reason. Let me ask you this. Let me put it another way. In Guy Pann and in the appellate court case, the way they got the fact that it didn't cover anything else, the courts said, well, it says, including but not limited to, glass covers and plastic covers. So the legislature was talking about things attached to the plate, and that's what led them to their conclusion that this was ambiguous or something and maybe only applied to things attached to the plate. So they took out the language referring to limiting it to things attached to the plate as construed by the appellate Supreme Court. I mean, isn't that how those courts got to where they got by saying, well, this statute's talking about things physically attached to the plate, glass and plastic covers, and things of the order. Right. The appellate court expressly used the term illustrative example as for glass and plastic covers. The appellate court didn't mean to say that glass and plastic covers were the only thing that was relevant here. These were one of any number of things that could be attached to a plate and would not violate the statute at that time. So what we've got is a situation where we've got an appellate court and a Supreme Court interpreting a statute, and a legislature that had wanted to could have very easily, very simple and expressed language, changed the statute to say that anything that materially obstructs the view of a license plate is unlawful. Anything being trailer hitches, bicycle racks, anything of that nature is unlawful, period. And the reason that the Supreme Court and the appellate court didn't think that was such a great idea was because, again, and I'm repeating myself, and I apologize for that, but it criminalizes ordinary conduct. And if that's where things are headed in this case, then we're back to a situation where folks driving down the street, folks who are moving and driving down the street and have rented a trailer, bang, violation of the law, automatic traffic stop. An elderly person hauling a motorized scooter and it appears to license plate, bang, violation of the law, automatic traffic stop. Somebody driving to ride their bike in one of our beautiful state parks, bang, violation of the law, automatic traffic stop. Ordinary behavior becomes criminalized. I don't think anybody wants that. And that's the reason that both of these courts in Guyton came down the way that they did, was that ordinary behavior should not be criminalized and ordinary behavior should not give police officers free rein to seize individuals. That's just simply unreasonable under the Fourth Amendment, Your Honors. I'd like to take a little bit of time to talk about the second issue that we raise in this case, and that's the probable cause had dissipated after the troopers found nothing in their roadside search of the vehicle. The troopers searched this vehicle on the side of the highway twice and found no drugs and then moved this vehicle to a second location where they continued their search. And this is an armed recourse decision and Polito is directly on point. It was different than Polito because there wasn't a completion of the, there wasn't a first and second search. It was continuous search, wasn't there? Dog alerted? The search, all due respect, the search could not have been continuous if this vehicle was hauled from I-80 to wherever it was hauled. Or treacherous conditions. It was raining. And Polito expressly said that regardless of what the weather conditions were or were not at that time, probable cause had dissipated. And that was what the Polito case said. Here there was a canine alert surrounding weather and safety conditions. Right. And about the canine alert, the canine alerted on the rear of Mr. Varnauskas' vehicle. The troopers searched the heck out of Mr. Varnauskas' vehicle and didn't find anything. And at that point they decided that they were going to go ahead and move this car. And we have binding precedent coming out of this very court saying that that's not allowed. Can't do that. Once you've thoroughly searched the vehicle and found nothing, probable cause has dissipated regardless of what the weather is. Had the troopers, it may be arguable that under a different set of circumstances had the troopers decided to move this vehicle before they searched it at all, that that might have been allowable, but that's not what happened in this case. What happened in this case was that these troopers had searched the heck out of Mr. Varnauskas' car. In this case, was it 20 degree weather, low visibility? I mean, was it unreasonable to move this vehicle under these conditions? Was it unreasonable to move this vehicle under these conditions? Yes, after they had searched under Palio, after they had searched his car twice, particularly the place where this dog had alerted, searched the car twice, found nothing. What Palio says is regardless of what the weather situation is, at that point probable cause has dissipated. Well, I get it, but we're not bound by Palio. So the question is, was this unreasonable? It seems that police officers and state troopers ought not to have free reign to search, to hold individuals, to seize individuals for an unlimited amount of time. Once you've got the dog has alerted, all right, there's probable cause you can search the car. Troopers had done that here, and they had done it thoroughly. If you want to see a video of it, they had thoroughly searched his car, they had thoroughly searched the place where the dog had alerted. Well, don't professional drug runners often, you know, heck, they put, they carried drugs in a gas tank, and up inside of wheel wells and engine compartments and things like here, that you just can't find on the side of the road without dismantling the car. Now, if it was sunny and 70 degrees at 11 o'clock in the morning, it might have been reasonable to do a more extensive search and fix any of the tools to get in there, but under the circumstances, out on the side of the road is not a safe place to be doing that for the defendant or the police or even motorists. And that's all true, but nonetheless, the officers decided to go ahead and do that search on the side of the road, and they did it in the place where the dog had alerted, and they came up empty. They did it twice, not once, but twice. They searched his vehicle twice on the side of the road where the dog had alerted and came up empty, and under the binding precedent of this law. It's not binding on us. It's not. All right. It's okay. All right. We respectfully ask this Court reverse Mr. Varnaska's conviction. So for the record, it's precedent, but it's not binding precedent on any felon court. No. Actually, no. That's okay. You're back. May it please the Court, good afternoon. My name is Jasmine Morton. I represent the people of the state of Illinois in this matter. As it relates to the first issue, the trial judge properly denied defendant's motion to suppress evidence because the stop was lawful, based on a bicycle rack obstructing the view of the rear license plate. The trooper had a reasonable suspicion that defendant had violated Section 3.413B, and defendant had, in fact, violated that. The straps or the harness of the actual bicycle rack came down over the plate. You couldn't clearly see the registration. You couldn't clearly see the digits of the letters or the numbers on the license plate, and you also couldn't clearly see while driving which state the license plate was from. Was the bicycle rack attached to the license plate? It wasn't specifically attached to the license plate, and it's difficult to tell based on the photo whether or not those straps go into the trunk as if they're wrapped around and coming through the trunk and pulled through and attached that way, or if they're just hanging down. But regardless, the trooper stated that he could not clearly see the digits. He could only make out maybe two of the digits while driving. What is your argument with regard to the GATAM cases? My argument is, one, there's a factual distinction between the ball-type hitch attached to the car versus the bicycle rack. And further, the GATAM case is referring to the statute before it was changed. It included plastic covers and glass covers, which led the court to feel that the statute was ambiguous and actually made a pleading to the legislature to make this statute a little bit more clear. And now we have clarity. They have removed the plastic plate covers and the glass plate covers from that area in the statute, and we see that it's any obstruction. And I would consider this to be an obstruction to anyone in need of viewing the defendant's license plate. Further, opposing counsel referred to criminalizing normal behavior. I know that several courts in Illinois have cited a license plate being too dirty, and that's showing that it's so dirty, in fact, that it looks like a license plate isn't there, and officers pulling over people for that, or so much snow accumulation that it hasn't snowed for two days, but there's still so much snow accumulation that no one can see your license plate. People have been pulled over for that, and those stops have been proven to be legal stops. So it's not criminalizing normal behavior. It's not forcing people to go to a car wash or anything else. It's just forcing us to ensure that our license plates are clear so that officers can observe them. Now, on to the second issue. Probable cause hadn't dissipated after the first search, and I know that opposing counsel refers to it as being two completed searches on the side of the road. Based on our view of the squad car video, it looks as though the officers began searching, paused to talk, going out of the view of the camera, and then continued to engage in the search. So it was one search that occurred, and it was continuous. The fact that it was after 11 o'clock at night, low visibility, as you stated earlier. It's 20 degrees outside. We've already gotten a canine alert. We have a car that is coming from California. This person is not on the rental agreement, which the officer was trying to figure out if this person was even allowed to drive this car. The defendant said that he was headed to Connecticut, yet the rental agreement said that he needed to return the car in two days. His story wasn't adding up. And the officer, based on his knowledge and expertise when it comes to people running drugs, stated that the interstate is a pipeline for moving drugs. He had receipts. Didn't he have a series of receipts? From hotels and food restaurants, showing that he had traveled cross-country. And it was highly unlikely that he was going to go to Connecticut and turn right back around to head back to California on a rental car that he's not even registered to have. So based on all of those things, the officer felt, including the canine alert, that the search needed to continue, and it needed to continue in a space that would allow them to fully search the vehicle. And three kilos of cocaine and heroin were found inside the car in a space that it's highly unlikely that the officers would have been able to get to on the side of the busy I-80. Are there any further questions? No. We asked the two of them. Thank you. Before you start, by the way, if I snapped at you, I apologize. I love war arguments. I get wound up. If I misspeak, you are entirely welcome to snap at me. I just want to make sure. There is no reason whatsoever for you to apologize to me, Your Honor. No, please. But thank you. As to the first issue, I just want to reemphasize a couple of things here. And I understand that we're going to disagree about this, but I need to reemphasize this at any rate. The statute, in our view, had not materially changed. What the Guy Tan Appellate Court expressly called an illustrative example of these license plate covers was moved to a different portion of that statute and expressly made a violation of law. That's the only thing that happened here. And the Supreme Court, I would note that the Supreme Court's decision in Guy Tan, only one footnote, footnote number one, acknowledged that. They acknowledged that that change had been made, and they still urged the legislature to clarify this, meaning that it still was unclear to them. This statutory language that we're talking about isn't as clear respectfully, isn't as clear respectfully as I think Your Honors would believe. Had it been that clear, the Supreme Court surely would have said so. And I would also emphasize again that had the legislature wished to criminalize things like trailers and bicycle racks, the legislature certainly could have done that and they didn't do it. Well, let me ask you this. In the revised statute, it starts out, except for vehicles with rear-loaded motorized forklifts, except for those. Is that language in the Guy Tan statute? I don't recall, to tell you the truth. I do recall noticing that language in the revised statute. My feeling was that this had nothing to do with- And we know that motorized forklifts are not going to be attached to the car by the license plate. Common sense says you can suspend a motorized forklift on a car by hooking it, by screwing it to the license plate, wherever he was going on the ground. Right? Right. So it would seem, except for those, and that language is saying anything other than that. Now, why they made that exception, I don't know. Who's got a friend of the legislature that sells motorized rear-mounted forklifts? But that also seems to refer to other things that might be attached to a rear car, such as bicycle racks, et cetera. If it's not a rear-mounted motorized forklift, you're in violation? Fair enough, and on that interpretation, everybody who drives around with a trailer and is moving from point A to point B is in violation of the law and gets pulled over. Anybody who's driving around with a bike rack going to ride a bike somewhere is in violation of the law and gets pulled over. Anybody who's disabled and is hauling a wheelchair in the back of their car is in violation of the law and gets pulled over. Let's talk about ordinary conduct. I can't remember the last time, if ever, I got out at night to look and see if my rear license plate had burned out. The license plate light had burned out. People drive around and fine folk. But I don't know how many people get out every once in a while and check the gym and make sure my rear license plate light's on so that it's not criminal behavior. And by the way, these offenses are not crimes. They're petty offenses. But they do give probable cause for a stop. So good people do things that are in the vehicle code that amount to violations of the vehicle code, which in most cases, with the exception of certain things, are not even misdemeanors but petty offenses. Right. And in addition, at least in Illinois, we put people who rent trailers out of business because nobody's going to rent a trailer in Illinois. Once this becomes clear that everybody's going to have a minimum, whether we call it a crime route, people are going to get pulled over and handed a ticket, and perhaps there's going to be a dog that sniffs around the car. They're going to be detained on the side of the road. For God knows how long, nobody's going to rent a trailer at that point. And so the folks who rent these trailers collide. I'm not sure it's relevant, but there may be an exception with a trailer that has a plate on it, a plate on the trailer. All due respect, the Supreme Court addressed that, and the statute says that these registration plates have to be attached to the vehicle. Right, that you get one on the vehicle. But I'm saying if that's obstructed by a trailer that has its own registration plate on it, I don't know if that's relevant to what we're talking about. The Supreme Court addressed that very issue, Your Honor, and said that that would be a violation. One more, please. Just one or two more very quick things on this second issue. One thing on the second issue. Whether or not Mr. Varnauskas' story made sense or not has nothing whatsoever to do with whether or not probable cause dissipated in this case. Boards and Council, with all due respect, made much out of the fact that Mr. Varnauskas' story was suspicious. That is completely and utterly separate from the issue that we presented in Issue 2, which is whether probable cause dissipated. Well, wouldn't you agree that even on a probable cause stop in the search, the keystone in Fourth Amendment law is reasonableness? Yes. And so while I suspect in some cases probable cause can dissipate after a certain time and in others in that same amount of time not so much, depending on the reasonableness of the conduct of the police officers at the time. So you don't have to agree with that, but nonetheless I'd say what was unreasonable under the circumstances about what these officers did? In our view, because the police officers had searched,  not the front of the vehicle, the rear, and they had searched the heck out of that, and whether we call this one long search that's interrupted by a discussion with Mr. Varnauskas or whether we call it two separate searches doesn't matter very much. From our point of view, it's two searches. From opposing counsel's point of view, it's one search. Okay, that's a semantic difference. But the troopers had plenty of time to search the heck out of the area where that dog alerted, and they did that. They tore that luggage apart, tore that part of the car apart, found nothing. Probably the cause dissipated at that point from our point of view, Your Honor. But if you're right, then all you've got to do to smuggle drugs from the state is to be able to put that dope in a spot in the car where the officers couldn't reasonably find it on the side of the highway at night. Well, if someone was clever enough to put that dope somewhere the officers could never find it, then they wouldn't get caught either. Well, none of them ever think they're going to get caught. The prisons are full of people that weren't going to get caught. Nobody goes out with an intention of doing it. But when you're hauling, the amount of dope in this case was fairly valuable. And so people that are hauling those kind of drugs think they're smarter and try to put it in places that a police officer can't find it readily. And under your theory, it would seem that that wins the day because we can't go beyond just looking through the car. Well, again, and I'm going around in circles here because I can't think of anything else to say at this point, frankly, Your Honor. The dog alerted at the back of the car, and he asserts that out of the back of the car. They hadn't found anything. And under paleto, probably the cause had dissipated at that point. All comes down to facts. Any other questions? Thank you very much for your time, Your Honor. Thank you, Your Honor. Well, we'll take this under advisement, and we'll take a recess until tomorrow.